UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


STARR E. PAYNE,

        Plaintiff,

v.                                                Case No. 1:09-cv-1159
                                                  Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of

a final decision of the Commissioner of the Social Security Administration (Commissioner) denying

her claim for disability insurance benefits (DIB).

        Plaintiff was born on September 3, 1968 (AR 142).[1]  She completed high school and

one year of college, receiving a receptionist clerical certificate (AR 33).  Plaintiff alleged a disability

onset date of December 29, 2003, which was later amended to May 7, 2006 (AR 26, 29, 142, 147).[2]

She had previous employment as an assembler, factory worker, cashier, clerk, press operator, and

hauling milk for the Amish  (AR 148).  Plaintiff identified her disabling conditions as problems with

her back and knee, an overactive bladder, sinus problems, asthma, and blood sugar problems (AR

147).   On May 6, 2009, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and

entered a decision denying benefits (AR 11-22).  This decision, which was later approved by the

_____

      [1] Citations to the administrative record will be referenced as (AR "page #").

      [2] The disability onset date was amended due to an earlier ALJ's decision which found that plaintiff
was not disabled as of May 6, 2006 (AR 69-74).

Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of December 29, 2003 through

the date she was last insured for DIB, June 30, 2008 (AR 13). At step two, the ALJ found that plaintiff suffered from severe impairments of: degenerative disc disease of the lumbar spine, status post fusion; degenerative disc disease of the cervical spine, status post fusion; degenerative joint disease of the right knee, status post arthroscopic repair times two; restrictive asthma; type II diabetes mellitus; obesity; obstructive sleep apnea; and right carpal tunnel release (AR 13). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 14). In this regard, the ALJ found that based upon the testimony of a medical expert (ME), plaintiff did not meet the severity of a listed musculoskeletal, respiratory or endocrine impairment (AR 14). In addition, the ALJ found that plaintiff's mental impairment did not meet or medically equal the criteria of Listing 12.04 (affective disorders) (AR 14).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC), through the date last insured:

> to perform sedentary work as defined in 20 CFR 404.1567(a) as lifting and carrying 10 pounds occasionally and 5 pounds frequently, standing and/or walking 2 hours of an 8 hour day, and sitting 6 hours of an 8 hour day, limited to no more than occasional overhead reaching and bending, avoiding the use of foot pedals, kneeling, crouching and crawling, and exposure to high concentrations of air pollutants, and further limited to 3-to-4 step instructions and tasks in unskilled, routine, repetitive work and no more than brief and superficial contacts.

(AR 15). The ALJ also found that plaintiff was unable to perform any of her past relevant work (AR 20).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of sedentary jobs in the national economy (AR 21). Specifically, plaintiff could perform the following jobs in the regional economy: surveillance system monitor (650 jobs); inspector (600

jobs); assembly (250 jobs); and order clerk (600 jobs). Accordingly, the ALJ determined that plaintiff was not disabled under the Social Security Act from the original alleged onset date of December 29, 2003 through June 30, 2008, the date last insured (AR 21-22).[3]

### III. ANALYSIS

Plaintiff raised four issues (with additional sub-issues) on appeal:

**A.      The ALJ failed to give proper weight to the opinion of plaintiff's treating physician, as required by 20 C.F.R. § 404.1527(d).**

Plaintiff contends that the ALJ failed to give proper weight to the opinions expressed by her treating physician and orthopedist, Dale Rowe, M.D. Plaintiff relies on Dr. Rowe's opinion as expressed in a form dated April 1, 2009, in which Dr. Rowe stated that plaintiff was limited to sitting 2 to 3 hours and standing and walking less than 2 hours during an eight-hour workday, that she would need to lie down hourly, and that she would miss three or four days of work each month due to her illnesses (AR 776-77). Plaintiff contends that the ALJ disregarded Dr. Rowe's opinions and followed the lesser limitations as determined by the ME who testified at the administrative hearing.

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is

---

[3] It is unclear as to why the ALJ's decision referred to the original onset date of December 29, 2003 rather than the amended onset date of May 7, 2006.

well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

The ALJ's decision reviewed plaintiff's treatment with Dr. Rowe commencing in February 2005 (AR 16-19). The ALJ "placed great weight on the opinions of Dr. Rowe that release the claimant to sedentary work," which was consistent with the ME's opinion and the overall evidence of record (AR 20). The ALJ apparently relied on a report prepared by Dr. Rowe on April 11, 2008, which found that plaintiff could work at her usual occupation with limitations of no lifting greater than 10 pounds, no twisting, no bending, frequent position changes, and no pushing or pulling (AR 403). This report is relevant to plaintiff's claim, having been issued less than two months before her last insured date.

The ALJ did not accept Dr. Rowe's subsequent opinions of April 1, 2009 and April 13, 2009, observing that these opinions were "not well supported by objective findings which are generally unchanged from January 2009" (AR 20, 774-79). In this regard, Dr. Rowe issued a

"School work note" on January 6, 2009, that plaintiff may return to work with the single restriction of "no lifting greater than 10 pounds" (AR 409).[4]  The court agrees with plaintiff that the ALJ's decision gave little explanation for rejecting these opinions.  However, the ALJ's failure to adopt the doctor's April 2009 opinions was harmless error.  *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("[n]o principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

The  evidence from April 2009 is only minimally probative of plaintiff's condition as it existed on her last insured date of June 30, 2008.  *See Siterlet v. Secretary of Health and Human Services*, 823 F.2d 918, 920 (6th Cir. 1987) (observing that opinions regarding alleged disabling condition issued eight months after the expiration of claimant's insured status cannot confirm a finding of disability for DIB).  Such evidence is only considered to the extent it illuminates a claimant's health before the expiration of his insured status.  *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  Plaintiff does not show how Dr. Rowe's opinions expressed in April 2009 shed light on her condition as it existed on or before her last insured date of June 30, 2008.  Accordingly, plaintiff is not entitled to relief on this issue.

**B.     The ALJ committed reversible error in failing to discuss plaintiff's testimony and/or failing to provide specific reasons for rejecting plaintiff's testimony.**

Plaintiff alleged that the ALJ failed to state an adequate basis or specific reasons to support his finding that plaintiff was not credible. Plaintiff contends that the ALJ ignored her

---

[4] It is unclear why the ALJ referred to an opinion from January 2009, which was issued more than six months after plaintiff's last insured date.

testimony regarding her limited ability to perform household chores; ignored her surgeries during the relevant time period (back surgery, neck surgery, two knee surgeries, a hysterectomy, and gall bladder removal); and did not give any activities performed by plaintiff on a regular, sustained basis that would be consistent with the ability to perform an eight hour work day. The ALJ summarized plaintiff's testimony as follows: "she is unable to engage in competitive employment due to chronic neck, back and knee pain which restricts her physical functioning, burning pain in her feet secondary to diabetes, and depression with significant social isolation" (AR 16).

While it is well-settled that pain may be so severe that it constitutes a disability, a disability cannot be established by subjective complaints of pain alone. "An individual's statement as to pain or other symptoms shall not *alone* be conclusive evidence of disability." *Cohen*, 964 F.2d at 529, quoting 42 U.S.C. § 423(d)(5)(A) (emphasis added). Rather, objective medical evidence that confirms the existence of pain is required. *Shavers v. Secretary of Health and Human Services*, 839 F.2d 232, 234-235 (6th Cir.1987). When evaluating a claimant's statements of subjective pain, the ALJ is required to determine the actual intensity and persistence of the claimant's symptoms and how these symptoms limit the claimant's ability to work. *Allen v. Commissioner of Social Security*, 561 F.3d 646, 652 (6th Cir. 2009), citing 20 C.F.R. § 404.1529(c) ("When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work").

In *Duncan v. Secretary of Health and Human Servs.*, 801 F.2d 847 (6th Cir. 1986), the Sixth Circuit fashioned a two-prong test for evaluating an alleged disability based upon pain.

*See Felisky v. Bowen*, 35 F.3d 1027, 1037-1039 (6th Cir. 1994) (the *Duncan* analysis is a "succinct form" of the Social Security Administration's guidelines for use in analyzing a claimant's subjective complaints of pain as set forth in 20 C.F.R. § 404.1529). To meet the first prong of the *Duncan* test, the claimant must present objective evidence of an underlying medical condition. *Duncan*, 801 F.2d 847 at 853. In order for a claimant to meet the second prong of the *Duncan* test "(1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain." *Id.*

In reviewing plaintiff's claim, it is the ALJ's function to resolve conflicts in the evidence and determine issues of credibility. *See Siterlet*, 823 F. 2d at 920. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

Plaintiff met the first prong of the *Duncan* test, the ALJ having found that she had severe impairments of: degenerative disc disease of the lumbar spine, status post fusion; degenerative disc disease of the cervical spine, status post fusion; degenerative joint disease of the right knee, status post arthroscopic repair times two; restrictive asthma; type II diabetes mellitus; obesity;

obstructive sleep apnea; and right carpal tunnel release (AR 13).

With respect to the first part of the second prong of the *Duncan* test, plaintiff must demonstrate that the objective medical evidence confirms the severity of her pain. A claimant's self-reports of pain do not constitute objective medical evidence. *See McGuire v. Commissioner*, No. 98-1502, 1999 WL 196508 at * 7 (6th Cir. March 25, 1999 ), *citing Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990). Reliable indicators of intense pain include muscle atrophy, reduced range of motion, muscle spasms, and motor disruption. *Jones v. Secretary of Health & Human Servs.*, 945 F.2d 1365, 1370 (6th Cir. 1991). The ALJ's review of the medical record rarely notes the existence of these reliable indicators (AR 16-19). While plaintiff reported stiffness in the back which limited her range of motion in September 2007, the medical records indicate that she had full muscle strength with no deficiencies of sensation in her legs and back (AR 16-19). Accordingly, the reliable indicators or intense pain appear generally absent.

The ALJ may also consider plaintiff's household and social activities in evaluating complaints of pain. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). Here, the ALJ noted that plaintiff is a single parent to two teenaged boys, engages in independent personal care, engages in a range of light household chores, and has the ability to get out of the home as necessary to attend appointments and shop (AR 14, 20). The court agrees with plaintiff that the ALJ did not address her testimony (e.g., she can walk 100 feet, her children cook supper, she shops riding an "amigo," the children do the dishes and laundry, she can only sit and fold the laundry, and she can only be on her feet for five minutes) (AR 34-35).

After reviewing the record, the ALJ found that plaintiff's statements were not credible to the extent they were inconsistent with the RFC and that her allegations of incapacitating

limitations were not consistent with or supported by the objective medical record (AR 16). However, the ALJ did not point out particular discrepancies between plaintiff's testimony and the medical evidence to demonstrate her lack of credibility. Based on this record, the court concludes that the ALJ did not adequately address plaintiff's testimony regarding her limited ability to perform household chores, the effects of her multiple surgeries during the relevant time period and her other activities in evaluating plaintiff's alleged pain and credibility.

Finally, it is unclear as to whether plaintiff met the second part of the second prong of the *Duncan* test, i.e., whether the objectively determined medical condition is of a severity which can reasonably be expected to give rise to the alleged pain. While no single medical condition meets this particular test, the ALJ does not address the combined effects of plaintiff's conditions such as asthma, diabetes, sleep apnea, and the effects of surgeries performed before and during the relevant time period (L5 nerve root with laminectomy and posterior fusion of L5-S1 (January 2004), arthrotomy and cartilage transplant (February 2007) and gall bladder (April 2008) (AR 285, 305, 542, 756).

In summary, the ALJ did not adequately address plaintiff's subjective complaints of pain pursuant to 20 C.F.R. § 404.1529. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 US.C. § 405(g) for a re-evaluation of whether plaintiff suffered from disabling pain.

C.     **The Commissioner's finding that plaintiff has the RFC for limited, sedentary work is not supported by substantial evidence.**

1.     **The ALJ failed to consider the treating physicians opinions, failed to consider plaintiff's obesity and failed to conduct a function-by-function analysis in determining plaintiff's RFC.**

### a.    Treating physician's (Dr. Rowe's) opinions

The court previously concluded that the sedentary work RFC was not contrary to Dr. Rowe's opinions. *See* discussion, *supra*. Accordingly, plaintiff's claim should be denied.

### b.    Medical evidence of depression

Plaintiff contends that the ALJ ignored the medical evidence of depression and did not find that she suffered from a severe impairment.

### 1.    ALJ's lack of finding a severe impairment of depression

A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Id.* An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id.* In this instance, the ALJ found that plaintiff suffered from a number of severe impairments (AR 13). Although the ALJ did not find that plaintiff suffered from a severe impairment involving depression, he exhaustively reviewed her medical condition. Accordingly, the ALJ's failure to find depression or other mental impairment as severe impairments is not error requiring reversal. *See Maziarz*, 837 F.2d at 244.

### 2.    ALJ's review of plaintiff's depression

The ALJ performed an adequate review of the medical evidence of plaintiff's depression. At the administrative hearing, plaintiff denied that she had ever been hospitalized for

psychiatric reasons (AR 40). On examination by her attorney, plaintiff testified that she had a therapist but was not taking medication for depression at that time (AR 40-41). Plaintiff further testified that she would be meeting a psychiatrist at Pines Behavioral for "some medicine" (AR 41). Plaintiff testified that she saw a therapist once a week, suffered from depression (i.e., she isolates herself, stays in the bedroom in her pajamas 90% of the time, has crying spells two or three times a day, bathes every two or three days) (AR 41-45).

The ALJ considered plaintiff's mental impairment, and concluded that it did not meet the criteria of Listing 12.04 (affective disorders) (AR 14). A Psychiatric Review Technique Form prepared by a DDS psychologist concluded that her mental impairments were not severe, being either mild or no functional limitations under the "B" criteria of the listings (i.e., restrictions of activities of daily living, difficulties in maintaining social functioning, difficulties in maintaining concentration, persistence or pace, and episodes of decompensation, each of extended duration) (AR 384).

In evaluating plaintiff's mental impairments, the ALJ found that plaintiff had more severe functional limitations than those identified by the DDS psychologist, but these did not meet the requirements of the Listing: plaintiff had a mild restriction on the activities of daily living (plaintiff is independent in personal care, performs light household chores, and is able to get out into the community for appointments and to shop); plaintiff had moderate difficulties in social functioning (while plaintiff described problems with motivation and social isolation, she maintained stable relationships with her two teenaged sons and her long-term boyfriend, and "[s]he presents well, is polite and cooperative and maintains eye contacts"); plaintiff had moderate limitations of concentration, persistence or pace (while plaintiff described deficits of memory and concentration,

she advocates well for herself and acts as a fairly reliable historian); and plaintiff had no episodes of decompensation of extended duration (AR 14).

The ALJ noted that at an annual examination with her family physician in June 2006, plaintiff complained of a 2-year history of depression with symptoms of anhedonia, decreased appetite, insomnia, crying spells, decreased concentration, fatigue, guilt, sadness, and feelings of worthlessness (AR 17). At a consultative examination in January 2007, Carol Lehmann, M.A., L.P., diagnosed plaintiff with a depressive disorder (AR 372). At that time, plaintiff listed several interests (collecting light houses, sewing Christmas gifts, following sprint car racing, reading, watching television, shopping and eating out ) (AR 369). Plaintiff arrived independently and on time, had good grooming and hygiene, maintained eye contact, and appeared logical, coherent, clear and organized (AR 368-73). In April 2008, plaintiff was referred for a mental health intake with Carol Daniels, M.A., L.P.C., because she was depressed and struggling with motivation, concentration, and low self-esteem (AR 19). She was diagnosed with major depressive disorder, recurrent, and "rule out dysthymic disorder" (AR 19). Plaintiff re-established mental health care in March 2009 due to ongoing social isolation, low motivation, poor sleep and depressed mood (AR 19).

In determining plaintiff's RFC, the ALJ found that plaintiff "is involved in inconsistent mental health care," that "[s]he generally presents well, cares for herself and her sons, and maintains sufficient mental functioning to allow for independent living" (AR 20). Based on this record, the ALJ declined to find that plaintiff suffered from a "severe impairment" based on her mental condition. Nevertheless, the ALJ took plaintiff's mental limitations into account by limiting her "to 3-to-4 step instructions and tasks in unskilled, routine, repetitive work and no more than brief

and superficial contacts" (AR 15).  Accordingly, the ALJ did not err with respect to evaluating plaintiff's mental impairment.

### c.    Plaintiff's obesity

The ALJ found that plaintiff had a severe impairment of obesity and noted that Dr. Rowe stressed the importance of weight loss in dealing with her back pain (AR 13, 18).  The ALJ found that plaintiff was limited to sedentary work with postural limitations (AR 15).  Plaintiff does not explain how the ALJ failed to account for her obesity in reviewing her disability claim.  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to  . . . put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).  Therefore, the court must deem this argument waived.

### d.    Function-by-function analysis of RFC

Plaintiff contends that the ALJ failed to complete a function by function analysis of plaintiff's RFC as required by SSR 96-8p.[5]  RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments.   20 C.F.R. § 404.1545.   RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis.  20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *see Cohen*, 964 F.2d at 530.

SSR 96-8p states that "[t]he RFC assessment must address both the remaining

---

[5] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency.  20 C.F.R. § 402.35(b)(1).

exertional and nonexertional capacities of the individual." SSR 96-8p ("Exertional and Nonexertional Functions). Each exertional function (sitting, standing, walking, lifting, carrying, pushing and pulling) must be addressed separately. *See* SSR 96-8p ("Exertional capacity"). Nonexertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength such as: postural (e.g., stooping and climbing); manipulative (e.g., reaching and handling); visual; communicative (hearing and speaking); mental (e.g., understanding and remembering instructions and responding appropriately to supervision); and the ability to tolerate environmental factors (e.g., tolerance of temperature extremes). *Id.* ("Nonexertional capacity").

"Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing . . . the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado v. Commissioner of Social Sec.*, 30 Fed.Appx. 542, at 547-548 (6th Cir. 2002) (citations and quotation marks omitted). Here, the ALJ met the requirements for articulating the RFC determination as discussed in *Delgado* by reviewing plaintiff's medical history and functional limitations with respect to her physical and mental impairments (AR 13-20). Accordingly, the ALJ did not err by failing to perform a function-by-function analysis of plaintiff's RFC.

      **2.**      **The ALJ failed to give a complete hypothetical to the vocational expert (VE).**

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and*

*Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha*, 927 F.2d at 231. *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Plaintiff contends that the ALJ's hypothetical question did not address her mental impairments (i.e., crying spells, self-isolation, anxiety and depression) or her need to miss work 3 or 4 days per month. The ALJ posed a hypothetical question which raised the restrictions as set forth in the RFC (AR 60-61). As previously discussed, the ALJ accounted for plaintiff's mental impairments by restricting her to 3-to-4 step instructions and tasks in unskilled, routine, repetitive work and no more than brief and superficial contacts with others such as coworkers, supervisors and members of the public (AR 15, 60-61). The ALJ did not accept plaintiff's claim that she would miss 3 or 4 days of work per month due to her pain, a limitation which would preclude employment (AR 63-64). Because the ALJ did not adequately address plaintiff's claim of disabling pain, the hypothetical question cannot be said to accurately portray all of plaintiff's limitations. Accordingly, on remand, the ALJ should obtain adequate vocational evidence relevant to the RFC determination.

3.     **Plaintiff did not perform her "past relevant work"
       long enough to be considered "substantial gainful
       activity."**

Plaintiff contends that her past work as a receptionist, which lasted only one month (AR 220), is inadequate to be considered "past relevant work" for purposes of the sequential evaluation. "Past relevant work" is defined as "work that you have done within the past 15 years,

that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1). Plaintiff cites no law or argument to support her contention that past relevant work must last over one month. Furthermore, even if true, plaintiff's contention is not outcome determinative. The ALJ did not deny plaintiff's claim at Step 4 of the sequential evaluation by finding that plaintiff was able to perform her past relevant work as a receptionist. Rather, the ALJ found at Step 4 that plaintiff was unable to perform her past relevant work, and proceeded to Step 5 to determine if jobs existed in significant numbers in the national economy that plaintiff could perform. This claim of error should be denied.

### 4. The ALJ's decision is inconsistent with the VE and ME testimony.

Plaintiff contends that the ALJ's decision is inconsistent with the testimony, stating that the VE and ME both testified that they would preclude all foot pedals or controls, kneeling, crawling or crouching (AR 53-54, 61). Plaintiff contrasts this testimony with the ALJ's decision found that plaintiff could perform work that included *avoiding* the use of foot pedals, kneeling, crawling and crouching (AR 15). Plaintiff contends that "there is a quantitative difference between 'no use' and 'avoiding,' and since the Commissioner has the burden at Step 5, this case either should be remanded for an award of benefits, or alternatively, for a new hearing." Plaintiff's Brief at p. 19. While plaintiff points out a distinction between the words "preclude" and "avoid," she does not address the relevancy of this distinction in the present case. The VE found that plaintiff could perform 2,100 jobs assuming that the identified actions were precluded (presumably, that the jobs did not involve these actions). Assuming that the ALJ's RFC determination is less restrictive, i.e., that plaintiff could perform work avoiding these actions (the use of foot pedals, etc.), then this less restrictive RFC should have resulted in finding more jobs that plaintiff could perform. Nevertheless,

the ALJ adopted the vocational evidence (2,100 jobs) based upon the more restrictive formulation used by the VE. Accordingly, plaintiff's claim of an inconsistency should be denied.

**D.    The Commissioner erred by not considering new evidence.**

Plaintiff contends that the ALJ should have considered new evidence submitted to the Appeals Council. Specifically, questions raised as to the interpretation of Dr. Rowe's notes from January 9, 2009. In the new evidence, Dr. Rowe clarified that he referred to plaintiff's back pain as being a "7" out of "10" and that it is common for diabetic patients to have chronic pain even after surgery where the fusion is stable (AR 231-32). Plaintiff contends that this clarification is significant, stating (without citation to the administrative record) that the ME testified that "he thought Dr. Rowe had stated that Ms. Payne's back problems were caused by diabetes." Plaintiff's Brief at p. 19. Rather, according to plaintiff, "Dr. Rowe found that plaintiff's *pain* was exacerbated by his diabetes, but that there were underlying problems with her back itself." *Id.* (emphasis in original). Plaintiff also points to her psychiatrist, Dr. Klein, who examined her in May and June 2009, found that she continued to suffer major depressive symptoms, and assigned plaintiff Global Assessment of Functioning (GAF) scores of 45 and 50. *Id.*

When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988) (per curiam). Section 405(g) authorizes two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Commissioner (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Commissioner

(sentence-six remand). *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994).

Plaintiff has requested a pre-judgment remand to consider new evidence under sentence six, which provides that "[t]he court . . . may at any time order the additional evidence to be taken before the Commissioner, but only upon a showing that there is new evidence which is *material* and that there is *good cause* for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (emphasis added). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "Good cause" is shown for a sentence-six remand only "if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability." *Koulizos v. Secretary of Health and Human Servs.*, 1986 WL 17488 at *2 (6th Cir. Aug. 19, 1986). In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711.

Plaintiff's request should be denied. Good cause does not exist for the new evidence submitted by Dr. Rowe, because it was generated after the hearing and submitted to the Appeals Council for the purpose of attempting to prove disability. *See Koulizos*, 1986 WL 17488 at *2. The good cause requirement is not met by the solicitation of a medical opinion to contest the ALJ's decision. *See Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (observing that the grant of

automatic permission to supplement the administrative record with new evidence after the ALJ issues a decision in the case would seriously undermine the regularity of the administrative process).

In addition, neither Dr. Rowe's records nor Dr. Klein's records are material, because they were generated in 2009, months after plaintiff's last insured date of June 30, 2008. While this evidence may be relevant to plaintiff's condition in January, May and June 2009, it does not reflect her condition during the relevant time period. *See Mingus v. Commissioner*, No. 98-6270, 1999 WL 644341 at *5 (6th Cir. Aug. 19, 1999) (deterioration of plaintiff's eyesight in August 1996 is not relevant to plaintiff's condition as it existed on her last insured date of December 31, 1993); *VanVolkenburg v. Secretary of Health and Human Services*, No. 8-1228, 1988 WL 129913 at *3 (6th Cir. Dec. 7, 1988) (deterioration of plaintiff's condition in 1987 not material to her condition in 1985); *Oliver v. Secretary of Health and Human Services*, 804 F.2d 964, 966 (6th Cir. 1986) (new medical evidence compiled in March 1985 that may show a deterioration in the claimant's condition "does not reveal further information about the claimant's ability to perform light or sedentary work in December 1983"). Accordingly, plaintiff's request for a sentence-six remand to review this new evidence should be denied.

### IV.    Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of whether plaintiff suffered from disabling pain.


Dated:  February 11, 2011                    /s/ Hugh W. Brenneman, Jr.
                                             HUGH W. BRENNEMAN, JR.
                                             United States Magistrate Judge

21

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).